USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/29/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CESAR MATEO,

                              Plaintiff,

    -against-

KEVIN O'CONNOR, JEFFREY MACISAAC,
STEVEN PURCELL, RICHARD WARD, J.
JARVIS, PAUL GUARINO, LIEUTENANT
LAPORTO, MARK ROYCE, and NEW YORK
STATE DEPARTMENT OF CORRECTIONAL
SERVICES.

                              Defendants.

10 Civ. 8426 (LAP)

**MEMORANDUM OPINION
AND ORDER**

Loretta A. Preska, Chief United States District Judge:

      This is one of several actions Cesar Mateo ("Mateo"), a prisoner currently incarcerated at Sing Sing Correctional Facility ("Sing Sing"), has brought *pro se* against various New York State prison officials under 42 U.S.C. § 1983. In this case, Mateo is suing the New York State Department of Correctional Services ("DOCS") and eight of its employees: Corrections Sergeant Kevin O'Connor ("O'Connor"), Corrections Officer Jeffrey MacIsaac ("MacIsaac"), Corrections Officer Steven Purcell ("Purcell"), Corrections Officer J. Jarvis ("Jarvis"), Corrections Lieutenant Richard Ward ("Ward"), Corrections Lieutenant Laporto ("Laporto"), Corrections Captain Mark Royce ("Royce"), and Civilian Maintenance employee Paul Guarino ("Guarino"). All of these defendants worked at the Green Haven Correctional Facility ("Green Haven") while Mateo was incarcerated there.

      Mateo's complaint alleges verbal and physical harassment by O'Connor, MacIsaac, Purcell, and Jarvis on August 21 and 22, 2008; the filing of a false inmate misbehavior report

1

("IMR") by O'Connor, MacIsaac, Purcell, Ward, and Guarino on August 22, 2008; a biased disciplinary hearing conducted by Laporto, Guarino and O'Connor on September 3, 2008; and a biased appeal conducted by Royce on September 9, 2008. Mateo claims these actions directly violated his civil rights under the Fourteenth Amendment and that they were undertaken in retaliation for Mateo's past grievance filings, in violation of the First Amendment. Mateo also alleges that O'Connor, MacIsaac, Purcell, Ward, Royce, Guarino, and Laporto conspired in this retaliation. With his complaint, Mateo provided a copy of a grievance filed on August 22, 2008 against O'Connor, MacIsaac, Purcell, Jarvis, Ward, and Rodriguez (the "Grievance"). Mateo concedes that he never completed an appeal of the Grievance. (Compl. ¶ 20.)

On April 15, 2011, defendants moved to dismiss the complaint in its entirety. (Defs.' Mem. Law Supp. Mot. Dismiss ("MTD") (Doc. No. 17).) Defendants argue that the Eleventh Amendment bars Mateo's claims against DOCS, (id. at 4–6), and that Mateo failed to: exhaust his administrative remedies before bringing suit, (id. at 6–8); allege the personal involvement of each defendant (id. at 9–14); state claims for retaliation or conspiracy (id. at 14–18), and allege a liberty interest requiring due process (id. at 18–21). On April 26, 2011, Mateo filed an affirmation in opposition to the motion, seeking in part to excuse his failure to exhaust his administrative remedies. (Doc. No. 25.) On June 17, 2011, defendants entered a reply. (Doc. No. 20.) For the reasons that follow, the Court grants defendants' motion and dismisses all of Mateo's claims with prejudice.

## BACKGROUND

The following facts are taken from Mateo's complaint and are not a finding of fact by the Court. Instead, the Court assumes these facts to be true for purposes of deciding the pending

motion to dismiss, and construes them in a light most favorable to plaintiff, the non-moving party.[1]

On August 11, 2008, Mateo was moved from Green Haven's "F-Block" housing unit to its "H-Block" housing unit "to be harassed, framed and set-up . . . in retaliation for . . . numerous written grievances against correction officers at Green Haven." (Compl. ¶ 6.)

On the morning of August 21, defendant Corrections Officer MacIsaac, while issuing Mateo a pass to participate in a hearing for an unrelated grievance, "belligerently and menacingly, said . . . do not ever write grievances against H-BLOCK staffs" or that Mateo would "get fucked up." (*Id.* ¶ 7.) Upon his return to H-Block, MacIsaac ordered Mateo to face the wall, defendant Corrections Officer Jarveis stood watch, and non-defendant Corrections Officer J. Vasquez pressed Mateo against the wall and pat-frisked him. (*Id.*) MacIsaac then said in a low tone of voice that "he can fuck me up, knock off my teeth, that it will happen to me right in this place . . . for writing grievances." (*Id.*) After a long wait, MacIsaac sent Mateo to his cell, where he discovered that the water and electricity had been cut off. (*Id.* ¶ 8.) Mateo wrote a complaint to the prison superintendent but did not file a grievance. (*Id.*)

On the afternoon of August 21, Mateo returned from the recreation yard to find his clothes on the floor and his possessions tampered with, and MacIsaac, Jarveis and J. Vasquez standing outside his cell laughing. (*Id.* ¶ 9.) MacIsaac then said "that is what happen [sic] when you write grievances" and threatened to beat up Mateo unless he entered his cell. (*Id.*) That

---

[1] In considering a motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). The court may also consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings. *See id.* at 152-53.

evening, Mateo wrote another letter to the superintendent explaining the situation but was denied permission to leave his cell for dinner and went to bed without mailing the letter. (*Id.*)

On the morning of August 22, MacIsaac observed Mateo carrying letters en route to breakfast. (*Id.* ¶ 10.) MacIsaac asked Mateo if the letters were grievances, but Mateo stated they were legal mail. (*Id.*) MacIsaac demanded to see the letters, and Mateo said no. (*Id.*) Defendant Corrections Sergeant O'Connor was then called on the radio. (*Id.*) O'Connor escorted Mateo back to his cell with a large group of officers, again denying him a meal. (*Id.*)

Shortly afterward, an officer informed Mateo that he had been transferred to "G-Block." (*Id.* ¶ 11.) While Mateo was carrying his property out of his cell, MacIsaac "was harassing and provoking [Mateo], calling [him] pussy, bitch, and standing [in his] way." (*Id.*) O'Connor and Jarveis were with MacIsaac, who then threw some of Mateo's property down the stairs. (*Id.*) As O'Connor escorted Mateo to G-Block, he told Mateo that he should know better than to write grievances. (*Id.*)

On the evening of August 22, in G-Block, Mateo received a "false, fabricated" inmate misbehavior report, charging Mateo with threatening MacIsaac and with causing a flooding and disturbance. (*Id.* ¶ 12.) The misbehavior report was allegedly authored by MacIsaac and signed by MacIsaac, O'Connor, defendant Corrections Officers Purcell and Ward, and defendant maintenance worker Guarino. (*Id.*)

That night, Mateo handed the duty officer the Grievance. (*Id.* ¶ 18.) The Grievance describes the morning incidents of August 22 but without much detail. (*Id.*) It then states that Mateo was issued a "retaliatory misbehavior report" and that he now fears being "hurt by staffs," noting "I fear for my life; I fear to be set up. My property, legal / personal file is not secure." (*Id.*

4

at 8–11.) Mateo's Grievance was stamped by Green Haven's Inmate Grievance Program as "received" on August 26, 2008 and annotated "retaliation by block 8/26/08." (*Id.*)

Mateo claims that the Grievance "was coded '49' which indicates Staffs Harassment, which required an expedite process, and to be responded to within 25 days by the Superintendent." (*Id.* ¶ 20.) The Grievance was ultimately investigated by non-defendant Corrections Captain Burnett and denied by the superintendent, but Mateo complains that the investigation "took over 90 days." (*Id.*) Mateo claims that, at the time, he "had problems understanding the grievance process and its Directive." (*Id.*) Nevertheless, he alleges that as soon as he received the superintendent's response to the Grievance, he "immediately, appealed it to CORC [Central Office Review Committee], which is the last step." (*Id.*) Mateo alleges that he placed his appeal form in the appropriate box outside of the mess hall but that he

> never received a response from CORC, which had 30 days to issue a response or decision, which indicates that it either refused or waived its response or decision or this grievance's appeal seems to have not been processed to CORC, intentionally, to frustrates [sic] the exhaustion of this administrative remedy, which I assert as the deliberated action of defendants O'Connor and MacIsaac.

(*Id.*) Mateo does not provide a copy of the appeal form, claiming that his copy was removed from his personal property, either when he was moved into Green Haven's Special Housing Unit, or when he was transferred out of Green Haven. (*Id.*)

On September 3, Mateo was found guilty by hearing officer Laporto of the charges in the inmate misbehavior report on the "fabricated evidence and biased testimony of Guarino and O'Connor." (*Id.* ¶ 15.) Mateo claims that he received "a disposition of the maximum penalty, in retaliation." (*Id.*) Mateo was apparently assigned to thirty days in keeplock, with a loss of commissary and phone privileges, from August 22 through September 21, and also a loss of package privileges from September 3 through October 3. (*Id.* at 11.) Mateo appealed the guilty

5

finding on September 9 to defendant Royce, who "arbitrarily and capriciously, affirmed the guilty finding and disposition, in retaliation, in favor of his comrades [sic] officers." (*Id.* ¶ 16.)

Mateo filed harassment and retaliation claims against O'Connor, MacIsaac, and Purcell on August 27, 2008 in the Northern District of New York. (*Mateo v. O'Connor*, No. 08-0923(DNH) (N.D.N.Y.).) Mateo's case was subsequently transferred here, because the complaint's allegations involved incidents at Green Haven, which is in this district. This Court dismissed Mateo's complaint because he filed it within mere days of the incidents of alleged harassment and retaliation, making exhaustion "impossible in so short a time frame." *Mateo v. O'Connor*, No. 08 Civ. 11053(RJH)(DCF), 2010 WL 3199690, at *3 (S.D.N.Y. Aug. 12, 2010). This Court informed Mateo that his case could be re-filed "with the addition of paragraphs explaining how administrative remedies have been exhausted." *Id.* (citations omitted).

On September 21, 2010, Mateo filed the present complaint.

## DISCUSSION

### A. Standards

#### I. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002). However, the Court does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 129 S.Ct. at 1949.

In the case of a *pro se* litigant, the Court reads the pleadings leniently and construes them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citations and internal quotation marks omitted). This guidance applies with particular force when the plaintiff's civil rights are at issue. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *see also Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, a *pro se* plaintiff's factual allegations must, however, be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**II. Section 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McKithen v. Brown*, 481 F.3d 89, 99 (2d Cir. 2007).

Mere threats, verbal harassment or profanity, without any injury or damage, are not actionable under Section 1983. *Harris v. Keane*, 962 F. Supp. 397, 406 (S.D.N.Y. 1997). Likewise, the filing of a false misbehavior report against an inmate does not constitute "a *per se* constitutional violation" actionable under Section 1983, provided the inmate is afforded due process protection via a disciplinary hearing. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). However, such actions, if taken in retaliation against an inmate for pursuing a grievance, may "violate[ ] the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments" and thus become actionable under Section 1983. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

To state a *prima facie* retaliation claim for filing a grievance, an inmate must allege that an official took an "adverse action" against him, and that there was a causal relationship between the grievance filing and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004). An "adverse action" is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Id.* at 381 (citing *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Actions below this threshold are deemed *de minimis* and outside the ambit of actionable First Amendment retaliation. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001)). Because retaliation claims are easily fabricated, the courts must "examine prisoners' claims of retaliation with skepticism and particular care," *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), requiring "detailed fact pleading . . . to withstand a motion to dismiss." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

### III. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") states in relevant part, "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This administrative exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

DOCS maintains a three-tiered administrative review and appeals system for prisoner grievances. *See* N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, § 701.5. Prior to pursuing a Section 1983 action in federal court, an inmate in the DOCS system must exhaust all three levels. *See Porter*, 534 U.S. at 524. First, he must file an inmate grievance complaint form or a written

grievance with the Inmate Grievance Resolution Committee ("IGRC"). *See* 7 NYCRR § 701.5(a). Second, if he is dissatisfied with the IGRC decision, he may appeal to the prison superintendent. *See id.* § 701.5(c). Finally, an inmate may appeal any superintendent's written denial to the CORC. *See id.* § 701.5(d).

For inmate allegations of harassment or other misconduct by prison employees, DOCS provides an expedited procedure. Such grievances are forwarded directly to the prison superintendent who will determine whether the grievance presents a bona fide harassment issue. *See id.* §§ 701.8(a)–(c). The superintendent may request an investigation by the Inspector General's Office and must render a decision within twenty-five calendar days of receiving the grievance. *See id.* §§ 701.8(d)–(f). An inmate may appeal the superintendent's response by filing a notice of decision to appeal to CORC within seven calendar days of receiving the response. *See id.* § 701.8(h). If the superintendent does not render a decision within twenty-five calendar days, the inmate may appeal the grievance to the CORC. *See id.* § 701.8(g).

A final decision by CORC is required in order to exhaust administrative remedies. *Torres v. Carry*, 672 F. Supp. 2d 338, 344 (S.D.N.Y. 2009). Such a requirement is particularly appropriate for expedited harassment grievances, which, unlike regular grievances, have only one level of administrative review at which to address violative practices and take ameliorative steps to mitigate damages. *See Cruz v. Jordan*, 80 F. Supp. 2d 109, 119–120 (S.D.N.Y. 1999).

The Court of Appeals has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *See Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Id.* at 686 (citation omitted). Second, if those remedies were available, "the court

should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, the Court should consider whether special circumstances have been plausibly alleged that otherwise justify the prisoner's failure to comply with the administrative procedural requirements. *Id.* (citations omitted).

### B. Relief Available

As an initial matter, Mateo seeks injunctive relief and monetary damages from the individual defendants. But Mateo cannot obtain injunctive relief from them, because he is no longer incarcerated in Green Haven. An inmate's transfer out of a facility moots any claims he has for injunctive relief against officials of that facility. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Mateo also claims to seek damages from the DOCS and from the other defendants in their official capacities. Such claims are barred by the Eleventh Amendment. *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002). Accordingly, only Mateo's claims for damages from defendants in their individual capacities are properly before this Court.

### C. Analysis

Defendants argue that all of Mateo's claims are subject to dismissal for failure to exhaust his administrative remedies. (MTD at 6–8.) Because this Court agrees, it need not reach defendants' alternative arguments.

Failure to exhaust "is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Dismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evident on the face of the complaint. *Id.* at 215. Here, Mateo's

complaint includes a copy of the Grievance purportedly supporting his claims and a section of his complaint entitled "Exhaustion of Grievance", which squarely admits his failure to exhaust his remedies with CORC. (*See* Compl. ¶ 20 ("I have never received a response from CORC . . . .").) Accordingly, an exhaustion defense is available with this Rule 12(b)(6) motion.

Retaliation claims "fit[ ] within the category of 'inmate suits about prison life,' and therefore must be preceded by the exhaustion of state administrative remedies available." *Lawrence v. Goord*, 304 F.3d 198, 200 (2d Cir. 2002). Likewise, the policies and procedures of a prison's disciplinary and grievance programs may themselves be the subject of a grievance. *Taylor v. Artus*, No. 05 Civ. 271, 2007 WL 4555932, at *7 (N.D.N.Y. Dec. 19, 2007) (citing 7 NYCRR § 701.3(e)(1), (2); N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E). Thus, all of Mateo's present claims are subject to the PLRA's administrative exhaustion requirement.

Mateo's August 22 Grievance alleges that he was verbally and physically harassed by defendants O'Connor and MacIsaac and that these defendants, together with defendants Purcell, Ward, Guarino, and Jarveis, conspired to submit a false misbehavior report against Mateo, all in retaliation for filing grievances. (*See* Compl. at 8–11.) Because the Grievance included allegations of harassment, it was sent directly to the facility superintendent pursuant to 7 NYCRR § 701.8. (*See* Compl. ¶ 20.) Mateo claims that he appealed the first denial of his Grievance to CORC immediately after it was denied in late November but concedes that he never received an appellate decision on his Grievance from CORC, and that he never otherwise pursued his appeal to its conclusion. (*See id.*) As Mateo failed to obtain a final decision from CORC before bringing suit, these claims are subject to dismissal unless he can show that his failure is justified.

11

Mateo did not identify any grievance directed to his claims of bias at the hearing and appeal. Accordingly, these claims are also subject to dismissal unless Mateo can show that he was justified in failing to grieve them.

Mateo presents four arguments under *Hemphill* to excuse the absence of administrative exhaustion, but none are availing.

First, Mateo argues that "the Inmate Grievance directive is confusing and at the time of the incidents and filing grievances I did not understood [sic] it." (Opp. ¶ 11.) However, as this Court has previously recognized, Mateo appealed at least six other grievances to CORC, all filed at the same time as the events in this action. *See Mateo v. O'Connor*, 2010 WL 3199690, at *3 n.5 (noting CORC's recognition of grievances filed on August 11, 2008; September 9, 2008; September 15, 2008; September 22; 2008; September 24, 2008; and October 1, 2008). In a separate action before this Court, Mateo has provided proof of exhaustion of three grievances from this time. Complaint Ex. A, *Mateo v. Alexander*, No. 10 Civ. 8427(LAP)(DCF), 2012 WL 864805 (S.D.N.Y. Mar. 14, 2012) (grievance filed June 18, 2008, CORC decision rendered November 26, 2008); *id.* Ex. B (grievance filed July 2, 2008, CORC decision rendered August 27, 2008); *id.* Ex. C (grievance filed August 11, 2008, CORC decision rendered October 1, 2008). Thus, when Mateo allegedly appealed his Grievance to CORC in late November, 2008, (*see* Compl. ¶ 20), he had already received at least two CORC decisions on other grievances and possibly more. Mateo cannot plausibly have reasonably misunderstood, at the end of 2008, the procedures for grieving an issue or for obtaining a response from CORC.

Second, Mateo argues under *Boyd v. Corrections Corp. of America*, 380 F.3d 989 (6th Cir. 2004), that the superintendent's untimely response and CORC's alleged failure to reply rendered the grievance procedure "unavailable." (Opp. ¶ 11). Defendants deny that CORC

12

received an appeal, (MTD at 8). But even assuming that Mateo filed an appeal and that the superintendent and CORC missed their response deadlines, the Court of Appeals has not adopted the position taken in cases like *Boyd* that a delay in responding to a grievance demonstrates *per se* unavailability. *See Rivera v. Anna M. Kross Center*, No. 10 Civ. 8696, 2012 WL 383941, at *4 (S.D.N.Y. Feb. 7, 2012) (citing *Hemphill*, 380 F.3d at 686 n. 6). In any event, Mateo's immediate appeal of the superintendent's reply, his familiarity with the grievance process, and his receipt of other decisions of appeals from CORC all demonstrate that the administrative process was "available" to him throughout this period and that he could reasonably have inquired with CORC as to the status of his appeal of the Grievance.

Third, Mateo argues that his failure to fully grieve his complaints should be excused because he feared reprisal from by MacIsaac and O'Connor. (*See* Compl. ¶ 18 ("I risked my person to write and file grievances . . . taking a chance, and risking physical harm from MacIsaac and O'Connor as they threatened . . . ."); Opp. ¶ 8 ("At H-Block my first amendment to file grievance and of speech was chilled, temporarily . . . The defendants threats of harm against my person and the issued false inmate misbehavior report chilled my speech.").)

The threat of retaliation can render grievance procedures "unavailable" if "'a similarly situated individual of ordinary firmness'" would be so fearful as to believe that such procedures were unavailable. *See Snyder v. Whittier*, 428 Fed. Appx. 89, 91 (2d Cir. 2011) (summary order) (quoting *Hemphill*, 380 F.3d at 688). Alternatively, defendants can be estopped from the defense of non-exhaustion if they prevented an inmate from availing himself of grievance procedures. *Id.* (citing *Hemphill* at 686).

Mateo's argument is again undermined by his continued filing of grievances and lawsuits during and after the period in question. *See id.* at 92 ("[Petitioner's] assertion that he feared

13

retaliation in the first place ... is belied by his testimony that he complained ... within two hours of the assault .... Our conclusion is further underscored by the fact that [petitioner] complained to no less than four other individuals about the attack, between the time he disclosed details of the attack to [the officer], and the time when he finally attempted to file a formal grievance."); *Davis v. Torres*, No. 10 Civ. 00308, 2011 WL 3918098, at *6 (S.D.N.Y. Aug. 29, 2011) ("Where plaintiff alleges that he submitted numerous grievances, he cannot also contend that he was meaningfully deterred from doing so."). Mateo filed his Grievance about the H-Block staff on the night of August 22, within 48 hours of the threatening events. Mateo then filed two additional grievances while on keeplock, and at least three more grievances before receiving an initial response to his August 22 Grievance. (Compl. ¶ 20.) Mateo even filed federal claims against O'Connor and MacIsaac within days of the incident in the predecessor to this case. Mateo's own behavior thus renders implausible claims that defendants' threats made the grievance process unavailable from September 2008 (when grievances as to the hearing were due) through the end of 2008 (when his appeal to CORC was due) or that he reasonably relied on their threats. *See also Harrison v. Stallone*, No. 06 Civ. 902, 2007 WL 2789473, at *6 (N.D.N.Y. Sept. 24, 2007) ("If every plaintiff bringing a retaliation claim could have the exhaustion requirement excused by alleging a fear of further retaliation, it would create a general exception to exhaustion for retaliation claims").

    Finally, Mateo suggests that MacIsaac and O'Connor may have intercepted his grievance appeal after he deposited it, preventing it from reaching CORC. (*See* Compl. ¶ 20; Opp. ¶ 9.) This conclusory suggestion is unsupported by any factual allegations and belied by Mateo's complaint insofar as he claims to have deposited his appeal in late November, 2008, but alleges no interactions with MacIsaac or O'Connor after the September 3, 2008 hearing.

In sum, because Mateo clearly availed himself of an available grievance procedure throughout the period at issue in this complaint and because no special circumstances have been plausibly alleged that would justify Mateo's failure to exhaust his administrative remedies in that procedure, all of his claims are dismissed.

In 2010, this Court dismissed Mateo's claims without prejudice, and with leave to refile them upon a showing of administrative exhaustion. Mateo has failed to do so in the present action, and the time limits for him to file new grievances, or to complete an appeal of his August 22 Grievance with CORC, have long since passed. The Court of Appeals has held that "dismissal with prejudice, when remedies are no longer available, is required 'in the absence of any justification for not pursuing [such] remedies.'" *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004)); *see also Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239–240 (W.D.N.Y. 2010); *Baez v. Kahanowicz*, 469 F. Supp. 2d 171, 180 (S.D.N.Y. 2007).

## CONCLUSION

Accordingly, because Mateo failed to properly grieve any of the claims in his complaint, defendants' motion to dismiss (Doc. No. 16) is GRANTED, and plaintiff's claims are dismissed with prejudice. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
March 29, 2012

*Loretta A. Preska*
Loretta A. Preska
Chief United States District Judge

15